FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ SEP 1 7 2012 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

JAVON JOHN ABRAMS,                          :

                             Petitioner,       :

      -against-                             :

UNITED STATES OF AMERICA,                   :

                        Respondent.     :

--------------------------------------------------------------X

MEMORANDUM & ORDER

11-cv-672 (ENV)

VITALIANO, D.J.

     Javon John Abrams is before the Court on his motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Abrams pled guilty to one count of conspiracy to distribute and possess with intent to distribute a controlled substance containing cocaine, in violation of 21 U.S.C. 841(a)(1), and one count of attempt to distribute and possess with intent to distribute a controlled substance containing cocaine, in violation of 21 U.S.C. 841(a)(1). For the reasons stated below, the motion is denied.

## BACKGROUND

     In late 2007, Arizona-based agents of the Drug Enforcement Administration ("DEA") initiated an investigation into Javon Abrams for drug trafficking. As part of the investigation, the DEA arranged for Abrams to meet a confidential source ("CS") in early February 2008. Abrams and the CS discussed purchase prices for marijuana and cocaine during the course of several consensually recorded telephone conversations and in-person meetings. The CS informed Abrams that he sold marijuana for $900 per pound and cocaine for $20,000 per kilogram. Abrams, in turn, told the CS that he did the "west coast to east coast thing" and thereby could obtain marijuana for $450 per pound. During an in-person meeting in a Toys 'R Us parking lot, the CS suggested his price was negotiable depending on the quantity of

1

drugs Abrams purchased.  On February 4, 2008, Abrams called the CS and agreed to purchase ten kilograms of cocaine for $195,000, realizing a discount of 2.5% per kilogram.  They planned to complete the transaction in another parking lot, this one attached to a Waldbaum's supermarket in Brooklyn.  Shortly before meeting, Abrams called the CS again.  In that consensually recorded conversation, Abrams stated that his girlfriend would also meet them there, and asked the CS if he had a razor to "rip the package open" so Abrams could inspect his purchase.  At approximately 9:20 that night, DEA agents observed Abrams enter the Waldbaum's parking lot and enter the passenger side of the CS's vehicle.  Abrams told the CS that his girlfriend would soon arrive with the money to complete the deal: "I'm just waiting for my chick here . . . now I'm waiting for my chick to go get my bread."  But then, DEA agents swooped-in and arrested Abrams.

A little over a year later, on April 20, 2009, Abrams pled guilty.  Abrams allocuted that on the evening of February 4, 2008, he conspired and attempted to purchase ten kilograms of cocaine for the purpose of distributing it.  As calculated in the Presentence Investigation Report ("PSR"), Abrams's advisory sentencing guidelines range was between 87 and 108 months.  However, because of the minimum term mandated by statute, the guidelines range was re-set at 120 months.  With that forecast in mind, Abrams's plea agreement included a waiver of his right to appeal or collaterally attack by § 2255 petition his conviction or sentence if the Court imposed a term of imprisonment of 121 months or less.

This Court imposed a concurrent sentence of 120 months in prison and entered the judgment of conviction to that effect on February 23, 2010.  On February 10, 2011, Abrams timely filed this § 2255 application, claiming ineffective assistance of counsel and actual innocence.[1]

**LEGAL STANDARD**

---

[1] Abrams did not appeal before filing his § 2255 motion. Generally, ineffective assistance of counsel claims are raised in collateral proceedings under § 2255.

A federal prisoner may move the sentencing court to correct, vacate, or set aside his sentence under 28 U.S.C. § 2255 if the prisoner can establish "(1) 'that the sentence was imposed in violation of the Constitution or laws of the United States,' (2) 'that the court was without jurisdiction to impose such sentence,' (3) 'that the sentence was in excess of the maximum authorized by law,' [or] (4) that the sentence 'is otherwise subject to collateral attack.'" Hill v. United States, 368 U.S. 424, 426-27, 82 S. Ct. 468 (1962).

In considering a § 2255 motion, a court views the evidentiary proffers and record in the light most favorable to a petitioner to determine whether he "may be able to establish at a hearing a *prima facie* case for relief." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief" a court must grant an evidentiary hearing on the matters raised. 28 U.S.C. § 2255(b). A court, however, need not take the petitioner's factual allegations as true where his claims are contradicted by the record. See Puglisi, 586 F.3d at 214; see also Contino v. United States, 535 F.3d 124, 127-28 (2d Cir. 2008) (per curiam). Additionally, a "court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 81-82, 97 S. Ct. 1621 (1977)). Methods available to a court to supplement the record include "letters, documentary evidence, and . . . affidavits." Garcia v. United States, No. 04 CIV 6020, 2008 WL 683661, at *5 (S.D.N.Y. Mar. 14, 2008) (quotations omitted). Most importantly, if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief," a court must dismiss the motion. Rules Governing § 2255 Proceedings, Rule 4(b), 281 U.S.C. foll. § 2255.

## DISCUSSION

A. Abrams Waived His Right to Collateral Attack

Abrams's plea agreement contained a waiver of his right to appeal or collaterally attack his conviction and/or sentence. Defendants regularly waive certain constitutional rights in exchange for benefits gained from an agreed settlement with the government. Plea agreements and the appellate waivers they often contain are commonplace and are "construed according to contract principles." United States v. Padilla, 186 F.3d 136, 140 (2d. Cir. 1999). "Waivers of the right to appeal [or collaterally attack] a sentence are presumptively enforceable," United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011), and are consistently upheld where the waiver is knowing, voluntary, and intelligent. See United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008); United States v. Johnson, 347 F.3d 412, 414 (2d Cir. 2003); United States v. Hernandez, 242 F.3d 110, 133 (2d Cir. 2001).

Abrams waived—in the plainest of terms—his right to "appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 121 months or below." (Plea Agreement, ¶ 4). In return, the government agreed, among other things, that it would not bring further criminal charges stemming from the same allegations and that it would not move for an upward departure from the Guidelines range contemplated in the plea agreement. (Id., ¶ 5).

To be sure, such a waiver can only be enforced if it was entered knowingly and intelligently. See Santiago-Diaz v. United States, 299 F. Supp. 2d 293, 298 (2d Cir. 2004). To knowingly and intelligently waive appellate rights, a defendant must understand both the charges against him as well as the potential consequences of the waiver. See United States v. Ready, 82 F.3d 551, 557 (2d Cir. 1996); Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998). "The knowing and voluntary nature of the waiver can be established by demonstrating that during the plea hearing, the defendant's attention was drawn to the waiver provision." Londono v. United States, No. 11 CV 6773, 2012 WL 2376456, at * 2 (S.D.N.Y. June 21, 2012).

4

Here, the Court unequivocally directed Abrams's attention to the waiver provision and explained it during the plea colloquy. Notably, petitioner affirmed to the Court his familiarity with, and willing acceptance of, the waiver multiple times when he pled and did so under oath:

> THE COURT: Now, if you go to trial and the jury found you guilty you could appeal both the verdict and the sentence. By pleading guilty and entering into the plea agreement you intend to enter, you will have waived or given up your right to an appeal or collaterally attack all or part of the sentence that I will impose. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you willing to give up your right to a trial and the other rights I have just discussed with you?
>
> THE DEFENDANT: Yes, I am, Your Honor.
>
> THE COURT: (Handing [plea agreement] to the defendant) Mr. Abrams, is that your signature at the bottom of that page?
>
> THE DEFENDANT: Yes, it is.
> . . .
>
> THE COURT: Mr. Abrams, before you signed the plea agreement, did you read it?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: Did you have an opportunity to discuss it with Mr. Brettschneider?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: Did you have any questions about the plea agreement?
>
> THE DEFENDANT: No, Judge.
>
> THE COURT: Do you have any questions about the plea agreement now?
>
> THE DEFENDANT: No, I don't.
> . . .
>
> THE COURT: Mr. Abrams, I want to go over with you specifically now what's set forth in the plea agreement as the possible consequence of your

plea . . . [u]nder this particular section of law, the maximum term of imprisonment that can be imposed is life. The minimum term of imprisonment that can be imposed is ten years. Do you understand that?

THE DEFENDANT: Yes.

. . .

THE COURT: Pursuant to this agreement, again, you also understand that in the event that the Court imposes a term of imprisonment of 121 months or below, that in your plea agreement you give up your right to file an appeal or to challenge your conviction or sentence by a form of any post judgment petition or writ. Do you understand that?

THE DEFENDANT: Yes I do.

(4/20/09 Plea Tr. at 11-14.)

The Court is entitled to rely on those statements, which petitioner made under oath in open court. See United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (rejecting petitioner's claim that waiver was invalid due to ineffective counsel, where petitioner affirmed during plea colloquy with court that he understood the terms of the waiver).

Abrams, apparently recognizing the pickle, pins his hopes nonetheless on a claim of ineffective assistance of counsel as a basis to be unbound from his agreed waiver. Of course, a "claim that may appropriately be raised for the first time in a § 2255 motion, whether or not the petitioner could have raised the claim on direct appeal, is ineffective assistance of counsel." Harrington v. United States, No. 11-2119-pr, Slip Op. at 8 (2d Cir. Aug. 6, 2012); see also Massaro v. United States, 538 U.S. 500, 504, 509, 123 S. Ct. 1960 (2003); Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010). Nothing, however, other than Abrams's *post hoc*, self-serving statements support his assertion. Rather, the record leaves no doubt that petitioner knowingly, voluntarily, and intelligently agreed to the appellate waiver. Abrams fails to present any credible evidence undermining his sworn testimony that he, in fact, understood the plea waiver when he pled guilty, see Garcia-Santos v. United States, 273 F.3d 506, 507-08 (2d Cir. 2001), and eschewed the Court's offer to answer any questions he might have about it.

6

It is true, though, that this procedural bar to § 2255 relief is not impregnable.  It may be avoided where either (1) a defendant can show both cause leading to the plea agreement itself and prejudice arising from it, or (2) where upholding the agreement would result in a fundamental miscarriage of justice.  See Coleman v. Thompson, 501 U.S. 722, 750, 753-54, 111 S. Ct. 2546 (1991).  Abrams's motion subtly implicates both grounds by asserting ineffective assistance of counsel leading up to his agreement to plead guilty, as well as actual innocence.

A.  Ineffective Assistance of Counsel

"A claim of ineffective assistance of counsel is not a vehicle for a criminal defendant to attempt an end-run around a knowing and voluntary waiver of his right to appeal his sentence." Nicholson v. United States, 566 F. Supp. 2d 300, 303 (S.D.N.Y. 2008) (citing United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998)).  Nonetheless, ineffective assistance of counsel constitutes cause to scrutinize the merits of a claim despite a waiver as to which a petitioner knew at the time of the deal the rights he would waive, the specifics of the charges, the consequences of the plea and agreed to it freely.  See Coleman, 501 at 753-54 ("it is not the attorney's error that matters, but that it constitutes a violation of petitioner's right to counsel, so that the error must be seen as an external factor").  Perhaps counsel who advocates a given deal is ineffective for doing so.  Where, however, a plea agreement waiving an appeal or collateral attack can be challenged as the product of ineffective assistance of counsel, i.e., a challenge that entering into the agreement itself was a decision made without effective assistance of counsel, the bar may be vaulted.  United States v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001).  Since that sort of claim is suggested by petitioner's papers the Court will examine the merits of any putative ineffective counsel objection to ensure "the constitutionality of the process by which he [entered the plea agreement]." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (quotations omitted).  The crucial issue is whether Abrams had the assistance of the kind of counsel the Constitution guarantees when he

7

agreed to the plea deal.  If counsel was constitutionally ineffective, it would likely negate the knowing and voluntary predicate mandated for appellate waiver.  Id. at 138-39.  Considered in the light of that different perspective, Abrams's claims still hold no water.

The watershed Strickland v. Washington, 466 U.S. 688, 697 (1984), of course, controls.  It prescribes a two-pronged test to determine ineffective assistance of counsel claims.  Both must be satisfied by an aggrieved criminal applicant.  Abrams must first show that his "counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  Regis v. United States, 665 F. Supp. 2d 370, 371 (S.D.N.Y. 2009) (quoting United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).  Courts "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential."  Strickland, 466 U.S. at 689.  Petitioner bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms.  Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S. Ct. 2574 (1986).  As for the second prong, Abrams must demonstrate prejudice, meaning he must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Failure to prove either dooms any claim of ineffective assistance.  Strickland, 466 U.S. at 697.

Abrams targets five facets of his counsel's performance for attack: 1) failure to advise petitioner that his conduct constituted neither an agreement nor an attempt to traffic drugs; 2) failure to advise petitioner of the mandatory minimum sentence prescribed by statute for the charged crimes; 3) failure to object to an inadequate plea allocution; 4) failure to inform petitioner of or object to unduly prejudicial facts contained in the government's sentencing submission; and, 5) failure to consult with petitioner with respect to an appeal.

*1.  Advice Regarding the Indictment*

Petitioner first asserts that his attorney failed to inform him that his behavior did not constitute conspiracy because petitioner "said nothing during negotiations or after his arrest establishing that his girlfriend or anyone else knowingly and intentionally agreed to participate in the drug deal." Second, Abrams claims his attorney failed to tell him that, as a matter of law, Abrams did not take the "substantial step" needed to constitute an "attempt" because at the time of his arrest, Abrams had neither the money nor immediate access to the money required to purchase the cocaine. Both contentions misstate the law. Counsel's failure to give such erroneous advice hardly establishes ineffective assistance.

Contrary to petitioner's shorthand understanding, conspiracy requires that at least two individuals, neither of whom is acting for the government, have a "shared purpose or stake in the promotion of an illegal objective." United States v. Parker, 554 F.3d 230, 234 (2d Cir. 2009). A conspiratorial agreement may be established by proof of a tacit understanding among participants, and does not require explicit agreements; circumstantial evidence is wholly adequate for proving the existence of, and participation in, a conspiracy. See United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997). Abrams concedes that he both "referred to, and claimed to have communicated with, a girlfriend who would bring money" to consummate the drug deal. (Abrams Mot. at 14.) Indeed, during consensual recordings made by the government's informant (who was not necessary to the conspiracy), Abrams stated numerous times that his girlfriend was driving to meet them with the money. (PSR ¶ 6.) More importantly, Abrams stated under oath in open court that a third-party acted as a co-conspirator:

> THE COURT: Was anyone else involved in your plan?
>
> THE DEFENDANT: No. Just myself. Oh, and the person on the phone.
>
> . . .
>
> THE DEFENDANT: I was waiting on someone else to bring the money to

purchase the cocaine.

THE COURT: There was going to be a supplier of money to you and you were going to purchase the cocaine, and a third person?

THE DEFENDANT: Yes.

(4/20/09 Plea Tr. at 20-21.)

Abrams argues in two steps that, despite his sworn statements implicating at least one co-conspirator and his multiple unsolicited references to a co-conspirator just prior to the time of arrest, his behavior did not amount to conspiracy because "neither the girlfriend nor the money ever materialized." (Abrams Mot. at 14.) In the second step, that his counsel's failure to inform him of that fact constitutes ineffective assistance of counsel. The law, however, does not require such tangible proof of conspiracies: Abrams's own words in the surreptitious recordings and in open court are sufficient. See United States v. Gordon, 987 F.2d 902, 907 (2d Cir. 1993) ("such circumstantial evidence may include acts that exhibit a consciousness of guilt"); United States v. Sanchez, No. S1 99 CR 338, 2001 WL 26212, at *5 (S.D.N.Y 2001). It seems, obviously, petitioner is having second thoughts on whether he should have risked trial on these facts. And, perhaps, a jury might have acquitted. But, there was sufficient evidence for a jury to lawfully convict him, too. The erroneous advice he faults counsel for not giving fails to meet even the first prong of Strickland. The failure of counsel to give an erroneous statement of the law is compelling proof of effective assistance.

Petitioner raises a similar argument regarding counsel's failure to inform him that his conduct was legally insufficient to support criminal liability for an "attempt" to traffic in drugs. It leads to the same dead end because it too is based on a misplaced notion of the law. Specifically, an attempt to commit a crime requires proof that the individual charged 1) intended to commit the crime, and 2) engaged in a "substantial step" toward the commission of the crime. The "substantial step" must be "something more than mere preparation, yet may be less than the last act necessary before the actual

10

commission of the substantive crime." <u>United States v. Gonzalez</u>, 441 F. App'x 31, 36 (2d Cir. 2011) (quoting <u>United States v. Manley</u>, 632 F.2d 978, 987-88 (2d Cir. 1980)).  Petitioner claims he took "only baby steps" in his attempt to procure a distribution or sale volume of cocaine because the promised money was not present at the scene of the arrest.

Petitioner's statement of the law—that money is categorically necessary in establishing a substantial step in attempting to possess cocaine for distribution or sale—is baseless.  The Second Circuit has consistently emphasized that "whether conduct represents a substantial step toward the fulfillment of a criminal design is a determination so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts." <u>United States v. Maney</u>, 632 F.2d 978, 988 (2d Cir. 1980).  Here, the evidence the government would have presented at trial leaves no doubt that Abrams discussed buying a large volume of cocaine multiple times with the CS, bartered over prices, reached an agreement, and—as Abrams admitted in court—met the CS at the agreed-upon location (a supermarket parking lot) for the express purpose of acquiring ten kilograms of cocaine with thousands of dollars his girlfriend was to bring: "All right.  Yes.  I was—the night—the evening in Brooklyn I was there to purchase ten kilograms of cocaine."  (4/20/09 Plea Tr. at 20).  Intent, plan and action.

Taken altogether, Abrams's actions undoubtedly could have supported a jury finding that he had taken a "substantial step" with respect to committing the underlying crime which would support an attempt conviction.  <u>See</u> <u>Soares v. United States</u>, 66 F. Supp.2d 391, 408 (E.D.N.Y. 1998) ("[I]t does not matter that [the defendants] did not actually bring the buy money with them . . . their trip . . . was a substantial step in furtherance of the crime.").  Counsel's so-called failure to advise Abrams that he took only "baby steps," <u>i.e.</u>, that a conviction could not stand, was more than reasonable under any standard, much less in light of the high degree of deference due to counsel under <u>Strickland</u>.  <u>See</u> <u>Strickland</u>, 466

11

U.S. at 689; <u>Kimmelman</u>, 477 U.S. at 381.  Indeed, if counsel had given the advice Abrams faults him

for not giving and Abrams was convicted after trial, a far better obverse argument might be appropriate,

and carry the first prong of <u>Strickland</u>.

   2. *The Mandatory Minimum Sentence*

   Abrams next contends that his counsel never informed him of the mandatory minimum sentence

applicable to his guilty plea and, thereby, created a deficiency of constitutional magnitude.  That

contention is frivolous and the record fully belies it.  First, petitioner's counsel affirms in his sworn

affidavit that he and Abrams discussed the mandatory minimum penalty.  (Dkt. No. 5-2, ¶ 2.)  Though

Abrams presents a conflicting affidavit, a court "need not assume the credibility of factual assertions . . .

where the assertions are contradicted by the underlying record."  <u>Puglisi</u>, 586 F.3d at 214.  Mere recital

of platitudes of law and bold assertion of fact, unsupported by objective evidence, are insufficient to

entitle a petitioner to a hearing.  <u>See Williams v. United States</u>, Nos. 00 Cr. 1008, 09 Civ. 2179, 09 Civ.

3493, 09 Civ. 2535, 2011 WL 3296101, at *4 (S.D.N.Y. July 28, 2011) (quoting <u>Dalli v. United States</u>,

491 F.2d 758, 760 (2d Cir. 1974)).

   That is the case here for Abrams's affidavit is, charitably, not supported by any objective

evidence.  More bluntly, it is flatly contradicted by his previous sworn statements and the record as a

whole.  In court, Abrams affirmed his awareness of the mandatory minimum sentence he would face

before the Court accepted his guilty plea.  Abrams also testified that, prior to signing the plea agreement,

he read it, discussed it with his lawyer, and had no questions about its contents.  (4/20/09 Plea Tr. at 12-

13.)  In the context of the prior proceedings, including Abrams's plea allocution, his statements in his

affidavit are simply and absolutely not credible.  <u>See Purdy v. Zeldes</u>, 337 F.3d 253, 259 (2d Cir. 2003);

<u>see also Cullen v. United States</u>, 337 F.3d 253, 259 (2d Cir. 1999).  At the time Abrams offered and the

Court accepted his plea, he was fully aware that he faced a mandatory minimum sentence and

potentially even more imprisonment.  As a result, even if counsel had not discussed the penalty with him, Abrams would clearly be unable to show prejudice.  See Strickland, 466 U.S. at 687.  Specifically, the government stated during the plea hearing that "because of the application and the statutory mandatory minimum the sentence would be 120 months." (4/20/09 Plea Tr. at 18.)  Likewise, both the PSR and the plea agreement itself make clear the mandatory minimum applies.  (See PSR ¶ 66; Plea Agreement at 1, 2; 4/20/09 Plea Tr. at 12, 13.)  And, finally, leaving no doubt as to the issue, Abrams's own words in his plea colloquy sound the death knell for this claim:

> THE COURT: Mr. Abrams, I want to go over with you specifically now what's set forth in the plea agreement as the possible consequence of your plea.  With respect to count one . . . [t]he minimum term of imprisonment that can be imposed is ten years.  Do you understand that?
>
> THE DEFENDANT: Yes.
> . . .
>
> THE COURT: Under Count Two, again, with respect to imprisonment, the section provides for a minimum term of ten years and a maximum term of life.  Do you understand that?
>
> THE DEFENDANT: Yes.

(4/20/09 Plea Tr.13-14, 15.)  Fully aware—at least by the time of his plea—that he faced a mandatory minimum term of years in prison, petitioner satisfies neither prong of Strickland on this point.

### 3. The Plea Allocution

On yet another front, Abrams argues his plea allocution was inadequate and that counsel's failure to object to it was ineffective assistance.  Concisely, Abrams argues the Court violated Federal Rule of Criminal Procedure 11 by failing "to insure Petitioner's understanding, knowledge and awareness of the charges and his exposure to a mandatory minimum sentence."  Neither claim, however, finds support in the record.

Rule 11 establishes court procedures for the offer and acceptance of guilty pleas.  Fed. R. Crim.

13

P. 11.  Before accepting a plea of guilty, a court's obligations include 1) addressing a defendant

personally in open court to inform a defendant of, and make certain a defendant understands, the rights

and duties of the parties involved; 2) ensuring that the plea is voluntary; and, 3) determining the factual

basis for a plea.  Fed. R. Crim. P. 11(b)(1)-(3).[2]  Courts are not required to woodenly adhere to the

formalities of Rule 11 so long as proceedings effectively accomplish its aims.  See Willbright v. Smith,

745 F.2d 779, 781 (2d Cir. 1984).  Indeed, a court may fulfill its tasks by simply reading the indictment

to the defendant if the court also determines that the defendant understands the nature of the charges

against him.[3]  See United States v. Maher, 108 F.3d 1513, 1521 (2d Cir. 1997).

      As discussed supra, the Court ensured Abrams knew of the mandatory minimum sentence he

faced.  During the plea proceeding, the Court read the charges, (4/20/09 Plea Tr. at 7), and Abrams

explicitly confirmed his understanding of them:

> THE COURT: Are those the two charges you had a chance to discuss with [your lawyer]?
>
> THE DEFENDANT: Yes, they are.
>
> THE COURT: Do you understand those charges?
>
> THE DEFENDANT: Yes.

(4/20/09 Plea Tr. at 8.)  Later in the plea hearing, Abrams provided a factual bases for those charges.

(Id. at 20-21.)  In a nutshell, the plea proceedings adequately facilitated Abrams's knowing and

voluntary plea allocution.  See United States v. Stevens, 19 F.3d 93, 95-96 (2d Cir. 1994). There was no

basis for objection and, obviously, counsel was not ineffective in failing to object.

---

[2] Notably, alleged violations of Rule 11, standing alone, do not provide grounds for collateral attack under § 2255. See Urena-Torres v. United States, 165 F.R.D. 12, 14 (N.D.N.Y. 1996) (citing United States v. Timmreck, 441 U.S. 780, 783, 99 S. Ct. 2085 (1979).

[3] The Court ascertained that Abrams had previously received a copy of the charges filed against him (4/20/09 Plea Tr. at 7), discussed those charges with counsel (id. at 8), and needed no clarification on any part of the proceeding (id. at 18-19).

*4. Failing to Object to the Government's Sentencing Submission*

Abrams's next ineffective assistance argument, fairly mystifying in its essence, apparently rests on two footnotes within the government's sentencing submission. He claims the footnotes accuse him of complicity in assaults and killings by Mexican drug dealers. According to Abrams, his counsel was ineffective both in that he failed to notify Abrams as to the offending footnotes and failed to contest the Court's purported reliance on those accusations in finding that "the mandatory minimum penalty accurately reflects society's evolving standards of decency." (Abrams Mot. at 19).

As an initial matter, neither footnote accuses Abrams of anything. These portions of the government's submissions merely provided context explaining, in effect, how this prosecution grew out of an overall DEA investigation conducted out of its Tucson, Arizona office. In any event, Abrams was not sentenced to a minute more imprisonment than the required mandatory minimum.[4] Any and all objections Abrams might have as to how his counsel handled post-plea proceedings resulting only in a mandatory minimum sentence are by definition not prejudicial and raise no Strickland issue. See Carabali-Ruiz v. United States, No. 09-cv-5511, 2012 WL 1372252, at *2 (E.D.N.Y. April 19, 2012); see also United States v. Luciano, 158 F.3d 655, 661–62 (2d Cir. 1998).

*5. Not Filing an Appeal*

Finally, Abrams claims that his attorney was ineffective because he failed to consult with him regarding an appeal. To show an attorney was constitutionally ineffective for failing to consult with a defendant about an appeal, the convicted defendant must show 1) there was reason to think a rational defendant would want to appeal, and 2) that the defendant indicated to counsel he was interested in appealing. Roe v. Fores-Ortega, 528 U.S. 470, 480, 120 S. Ct. 1029 (2000). "A highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea[,] . . . whether the defendant

---

[4] Nor was he sentenced to anything more than the minimum required period of supervised release.

15

received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." Id.

Abrams pled guilty, received the sentence referred to as the mandatory minimum in his plea agreement, and waived his rights to appeal. Additionally, the Court advised Abrams during sentencing that he personally had the right to appeal if he believed his plea waiver was unenforceable. (See 1/29/10 Sentencing Tr. at 12-13). Taken together, these factors indicate with clarity that if counsel did not consult with Abrams regarding an appeal, he was not ineffective in that decision. See Roe, 528 U.S. at 479-80. In point of fact, moreover, Abrams does not claim he asked counsel to file an appeal, nor is there anything in the record to suggest counsel had any basis to believe an appeal viable, much less consult Abrams about it.

C. Abrams is Not Actually Innocent

Perhaps fearing an inability to find refuge in the purported incompetence of counsel, Abrams argues actual innocence as a ground for vacating his sentence. Actual innocence falls under the "miscarriage of justice" exception to procedural bars on collateral attack. Doe v. Menefee, 391 F.3d 147, 160 (2d Cir. 2004). A showing of actual innocence is "demanding and permits review only in the extraordinary case." House v. Bell, 547 U.S. 518, 538, 126 S. Ct. 2064 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851 (1995). In Schlup, the Supreme Court established actual innocence as a gateway claim through which an accompanying constitutional claim, otherwise procedurally barred, may be heard.[5] Schlup, 513 U.S. at 315 (citing Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct 853

---

[5] In House, the Supreme Court also suggested, in *dicta*, the possible existence of a freestanding claim of actual innocence. See House, 547 U.S. at 554-555. Without going into detail, the Court concluded any such freestanding claim would bear an "extraordinarily high" burden of proof, and would require "more convincing proof of innocence than Schlup" required. Id. at 555. Abrams does not specify whether his is a gateway claim or purports to be a freestanding actual innocence claim. In any case, because Abrams does not meet the gateway requirements, he necessarily cannot make a case for a freestanding claim of actual innocence.

(1993)).  It is thus procedural, rather than substantive: one need not prove innocence, see House, 547

U.S. at 538, but instead the requirement is to present a claim both "credible" and "compelling." Schlup,

513 U.S. at 316.

A "credible" claim is one based on "new reliable evidence . . . that was not presented at trial."

Id. at 324; Doe, 391 F.3d at 161.  A claim is "compelling" only where a petitioner shows it is "more

likely than not, in light of the new evidence . . . [that] any reasonable juror would have reasonable

doubt" as to the petitioner's guilt.  House, 547 U.S. at 538.  Finally, a petitioner must claim factual

innocence, not mere legal insufficiency.  See Bousley v. United States, 526 U.S. 614, 623-624, 118 S.

Ct. 1604 (1998).

Abrams's actual innocence claim is untethered to an independent constitutional claim, and,

moreover, is neither compelling nor credible.  As an initial matter, Abrams does not assert that he is, in

fact, not guilty of the crimes to which he pled guilty, but instead declares that "there is no evidence to

support a jury finding, based on proof beyond a reasonable doubt" that he committed those crimes.

(Abrams Mot. at 23.)  Even if that were true (which it is decidedly not), it is inadequate to support a

claim of actual innocence; what he asserts is no more than an insufficiency of evidence argument

couched as actual innocence, and therefore provides no basis for discounting his plea, including the

appellate waiver.[6]  See, e.g. Gutierrez v. Smith, No. 06-CV-4939, 2010 WL 3855225, at *8 (E.D.N.Y.

Sep. 27, 2010).

Abrams fails to present any new evidence (other than the implied upwind recantation of his

admission of guilt), which means his claim is, simply, not credible.  See Rivas, 2012 WL 2686117, at

---

[6] Leaving aside the fact that an evidentiary insufficiency argument does not enable a petitioner to bypass
a procedural bar, courts apply distinctly different approaches to evidentiary insufficiency and gateway
actual innocence analyses.   Particularly relevant here is the fact that actual innocence requires
consideration of "all the evidence, old and new, incriminating and exculpatory" to "make a probabilistic
determination about what reasonable, properly instructed jurors would do."  See Rivas v. Fischer, No.
10-1300-pr, 2012 WL 2686117, at *23-24 (2d Cir. July 9, 2012) (quoting House, 547 U.S. at 538).

*23-24; Doe, 391 F.3d 147, 161; see also Rosario v. United States, 164 F.3d 729, 734 (2d Cir. 1998).

## CONCLUSION

For the foregoing reasons, Javon John Abrams's petition pursuant 28 U.S.C. § 2255 is dismissed and his motion to vacate, set aside, or correct his sentence is denied in its entirety.

The Clerk of Court is directed to enter judgment and close this case.


**SO ORDERED.**

Dated: Brooklyn, New York
       September 9, 2012

                                        s/Eric N. Vitaliano
                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge